**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

DONALD EUGENE HALPIN,

      Petitioner,

-vs-                                      Case No.  8:97-CV-46-T-27EAJ

JAMES V. CROSBY, JR., et al.,

      Respondents.
_____/

## ORDER

      This cause is before the court on remand from the Eleventh Circuit Court of Appeals (Dkt. 45). Petitioner, a State of Florida inmate, initiated these proceedings *pro se* by filing a petition for habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. 1).  He is now represented by counsel (Dkt. 67). Petitioner challenges his May 8, 1981 conviction of first degree murder in the Sixth Judicial Circuit Court, Pasco County, Florida.  For reasons set forth below, the Court finds that Petitioner has not met the criteria for relief under § 2254.

      The Eleventh Circuit remanded for further consideration with respect to three distinct claims of ineffective assistance of counsel:

      (1)  that counsel prohibited Petitioner from testifying at trial;

      (2)  that counsel failed to move to suppress statements made upon Petitioner's arrest; and

      (3)  that counsel denied Petitioner the right to be present at pretrial proceedings.

(Dkt. 45).[1]

---

[1] These claims are referred to as Grounds Six, Seven, and Five, respectively, in the remand order.

## Background

On the evening of May 30, 1980, Petitioner was confronted by law enforcement officers investigating the murder of Wallace Sabean. Petitioner had been seen leaving a bar with the victim and leaving the victim's residence. Petitioner was read his *Miranda* warnings and agreed to accompany the officers to the New Port Richey, Florida Police Department. The following morning, he was arrested and subsequently indicted for first degree murder. The State of Florida sought the death penalty.

Petitioner was initially represented by the Public Defender's Office. Over the course of that representation, he was represented by three assistants. Approximately four months before Petitioner's trial, the Public Defender's Office withdrew because of a conflict of interest and Attorney Harry J. Parker was appointed to represent him. After a jury trial, Petitioner was convicted. In the punishment phase, the jury recommended life in prison. Petitioner was sentenced to life in accordance with the jury's recommendation (Dkt. 8, Ex. 001, Vol. V at R. 1064; 1103).  Petitioner's conviction was affirmed on direct appeal. See *Halpin v. State,* 418 So.2d 1289 (Fla. 2d DCA 1982) (table decision). Several unsuccessful applications for state post-conviction relief were filed over the next 15 years. *See* Dkt. 8, Exs. 005; 010; 016; 017; 019.

In his petition for federal habeas relief pursuant to 28 U.S.C. § 2254, Petitioner originally raised thirteen grounds for relief in That petition was denied by the district court on April 4, 2000 (Dkt. 35). On appeal, the Eleventh Circuit remanded, finding that three of Petitioner's claims of ineffective assistance of counsel which the district court had determined were procedurally barred for failure to exhaust state court remedies were not procedurally barred because they were raised in Petitioner's Florida Rule 3.850 motion to

vacate filed on February 6, 1985. Those three distinct claims of ineffective assistance of counsel, as recited above, are the only claims before the Court.[2]

This Court conducted an evidentiary hearing on March 2, 2006. Petitioner and his state court trial attorney, H. James Parker, testified.

### Standard of Review

Where a state court initially considers issues raised in a petition for federal habeas relief and enters a decision on the merits, § 2254(d) governs the review of those claims. *See Penry v. Johnson,* 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). Pursuant to § 2254(d), habeas relief may not be granted with respect to a claim adjudicated on the merits in a state court unless the adjudication of the claim:

    1.    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    2.    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court's factual findings are presumed correct and a petitioner must rebut this presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). *See Henderson*, 353 F.3d at 890-91.

### Discussion

As discussed, this cause is before the Court for consideration on the merits of Petitioner's claims that trial counsel was ineffective for: (1) denying Petitioner the right to

---

[2] The Eleventh Circuit vacated the dismissal order and remanded the case for further consideration with respect to the merits of the three distinct claims of ineffective assistance of counsel. It left the judgment undisturbed in all other respects. *Halpin v. Moore*, Case No. 00-12525 (11th Cir. 2001) (footnote omitted).

be present at pretrial proceedings; (2) prohibiting Petitioner from testifying at trial; and (3) failing to move to suppress statements Petitioner made upon his arrest.  These are the only claims remaining before the Court.[3] *See Thomas v. Dugger*, 846 F.2d 669, 673 (11th Cir. 1988) (finding that "[t]he law is settled that a district court should not assert jurisdiction over matters that are without the scope of a mandate" (citation omitted)).

Petitioner's claims are premised on his Sixth Amendment right to effective assistance of counsel. To establish a claim of ineffective assistance of counsel, Petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance is performance which is objectively unreasonable under prevailing professional norms. *Id.* at R. 688. Prejudice results when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at R. 694.

In an order addressing the merits of Petitioner's ineffective assistance of counsel claims, entered on rehearing of the denial of Petitioner's Rule 3.850 motion, the state court found:

> Defendant seeks a rehearing of this court's order of 22 February 1985 which denied defendant's Motion For Post Conviction relief under Rule 3.850 which he filed 5 February 1985 based on ineffective counsel.  Only the claim of ineffective counsel will be considered herein as the defendant could have raised other issues on his prior appeal and failed to do so.

---

[3] A fourth claim Petitioner attempts to raise is that he was denied effective assistance of counsel in that counsel did not allow him to be present and confront State's witness Gusrang at a discovery deposition of Gusrang used at trial when Gusrang was unable to attend because he was hospitalized. Gusrang's deposition had been taken by Assistant Public Defender Moriarty, Petitioner's first public defender. This issue is not before this Court, however, as the Eleventh Circuit expressly noted in footnote no. 1 of its remand order that "the certificate of appealability did not permit an appeal of this issue and therefore, we do not review it." Accordingly, that claim was previously presented and rejected by the district court, was not presented on appeal and was not remanded for further consideration.  Moreover, to the extent that Petitioner attempts to raise a claim under *Crawford v. Washington*, 541 U.S. 36 (2004), that claim has never before been presented to the state court or this Court and is outside the scope of the remand order.

The leading case in this area of ineffective counsel is also a case having its origins in Florida and decided in 1984 by the U.S. Supreme Court, *i.e.*, *Strickland v. Washington*, 104 S.Ct. 2052 (1984). The claims of defendant herein must be measured against the requirements of *Strickland*, and when done so, fall short. Defendant has failed to show by his pleadings:

1.  That counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result;

2.  That counsel's assistance was so defective as to require reversal of conviction;

3.  That counsel's alleged deficient performance prejudiced the defense so as to deprive defendant of a fair trial;

4.  That counsel's assistance and representation fell below an objective standard of reasonableness;

5.  That, but for counsel's unprofessional errors, the result of the proceeding would have been different.

The undersigned was the presiding judge at the trial when defendant was found guilty by a jury of first degree murder. From such a vantage point and considering defendant's allegations, the facts of this case make it clear that counsel's conduct at and before defendant's sentencing proceeding cannot be found unreasonable under the standards of *Strickland*. They also make it clear that, even assuming counsel's conduct was unreasonable, defendant suffered insufficient prejudice to warrant setting aside his conviction.

Dkt. 8, Ex. 018, Order on Motion for Rehearing at R. 1246.

The state trial court applied the correct standard of review for Petitioner's Sixth Amendment right to effective assistance of counsel claims. *See Strickland*, 466 U.S. at 687. To establish entitlement to relief, Petitioner must establish that the state court incorrectly applied this standard in reaching its decision that the ineffective assistance of counsel claims raised in his Rule 3.850 motion lacked merit.

**Ground Five**

Petitioner contends that Attorney Parker was ineffective in denying Petitioner the right to be present at certain pretrial hearings. *See* Dkt. 1 at 11A. This claim is subject to

summary denial in the context of an ineffective assistance claim, as Petitioner has not shown that Attorney Parker was deficient in failing to insure Petitioner's presence or for that matter, that Parker had any control over whether Petitioner was present during any particular hearing. Absent a showing that Attorney Parker failed to request Petitioner's presence or failed to object to his absence when he was entitled to be present, there can be no showing that Attorney Parker's performance was deficient under *Strickland*.

Moreover, with respect to the specific hearings complained of, they involved purely legal argument and did not resolve factual issues. Petitioner has not shown that his presence would have contributed to the fairness of those hearings. Petitioner must establish that Parker's omission or conduct otherwise prejudiced him in order to establish his claim of ineffective assistance of counsel. Petitioner has not done so.

Although in his pleadings Petitioner complains about not being present during other hearings, during the evidentiary hearing before this Court, Petitioner expressly limited his complaint to two in-chambers hearings, one an emergency hearing called by the judge who announced increased security measures and the other on a motion in limine Attorney Parker made after trial began  regarding the admissibility of witness Gusrang's discovery deposition, which the State intended to introduce because of Gusrang's unavailability.[4] *See* Dkt. 8, Ex. 001, Vol. III at R. 419-23.

According to Petitioner and confirmed by the state court transcripts, these hearings were conducted either at sidebar or in chambers. The transcripts do not reflect that

---

[4] Attorney Parker made an oral motion in limine to exclude portions of Gusrang's deposition as hearsay and as nonresponsive. The attorneys agreed to review the deposition line-by-line and if they were unable to reach agreement, to bring the matter before the judge for resolution (Dkt. 8, Ex. 001, Vol. III at R. 419-22).  After conferring during the lunch recess, they agreed to omit a portion of Gusrang's deposition related to Petitioner's attempt to sell a "motor vehicle," and references to Petitioner's statements about Viet Nam and his attitude toward killing. *Compare* Dkt. 2, Ex. C, p. 3, ln. 3-12 and ln 18 - p. 4, ln. 12 and Dkt. 8, Ex. 001 at R. 444-46. As discussed *infra*, to the extent there was a hearing, it involved nothing more than the attorneys advising the court of their stipulation.

Petitioner was present.   Notwithstanding, the remand order from the Eleventh Circuit restricted this issue to Petitioner's contention that he was denied the right to be present during "pretrial proceedings."  The two hearings Petitioner complains he was not allowed to attend or participate in took place *during* his murder trial, rather than *prior* to trial. Accordingly, those hearings are outside the scope of the remand order.[5]  *See Thomas v. Dugger*, 846 F.2d at 673.

The Court has located only one reference in the record to a motion in limine argued pretrial, although Petitioner did not identify this hearing in his petition or testimony. *See* Dkt. 8, Ex. 001, Vol. I at R. 106-07. That motion, filed on November 18, 1980 by Public Defender Moriarty, sought to prevent the state from asserting that the murder was committed in a cold, calculated, and premeditated manner without any pretense of moral or legal justification as an aggravating circumstance in support of the death penalty, in the event the jury returned a guilty verdict. *Id.* After oral argument on December 10, 1980, the trial court denied the motion.  *Id.* at R. 114.  Having made no argument regarding his absence from this hearing, if he in fact was absent, Petitioner has failed to show that his presence was necessary to "the fairness of the procedure," *see Kentucky v. Stincer*, 482 U.S. 730, 745 (1987), or that he could otherwise have assisted in any way. From a review of the record, any benefit of Petitioner's presence at that hearing would have been "but a

---

[5] Petitioner also complains of not being present during arguments on motions for mistrial, *see id.* at R. 568-74; Vol. IV at R. 766-69, and a post-trial motion for new trial, *see id.*, Vol. VI at R. 1107-116. As evidenced by the state court transcripts, the hearing on increased security measures took place *after* trial began. Likewise, the hearings on the admissibility of witness Gusrang's deposition and the motion in limine Attorney Parker filed to exclude portions of the Gusrang deposition took place *after* trial began.

The hearing on Attorney Parker's motion on limine to prevent the admission of Petitioner's post *Miranda* statements, and the arguments on the motions for mistrial and post-trial motion for a new trial are outside the scope of the limited remand as they were not "pretrial proceedings."  In sum, Petitioner points to no "pre-trial" hearings he was not allowed to attend other than the hearings which resulted in the Public Defender's withdrawal.

shadow." *Snyder v. Massachusetts*, 291 U.S. 97, 106-07 (1934), *overruled on other grounds*, *Malloy v. Hogan*, 378 U.S. 1, 6 (1964).

Petitioner further asserts that he "was denied his presence at . . . pretrial hearings involv[ing] various Pasco County Assistant Public Defenders withdrawing from his case." According to Petitioner, he "had a severe conflict of interest with the public defender's office." As discussed below, Petitioner has misinterpreted the record.

The Pasco County Public Defender was appointed to represent Petitioner on May 31, 1980 (Dkt. 8, Ex. 001, Vol. I at R. 9). While Petitioner received legal assistance from three different assistant public defenders prior to trial, this was apparently the result of internal case reassignments at the Public Defender's Office rather than a court order on a motion to withdraw.

There were two pretrial hearings on the Public Defender's request to withdraw, in which the Public Defender raised a conflict of interest with respect to another indigent defendant that the Public Defender had been assigned to represent.[6] Following a hearing on January 6, 1981, the Public Defender's motion to withdraw was granted and Attorney

---

[6]On December 23, 1980, the State provided the Public Defender's Office notice that Anthony Minervini would testify to an alleged confession made by Petitioner while he and Minervini were incarcerated together in the Pasco County Detention Center. *Id.* at R. 117. The following day, the Public Defender was appointed to represent Mr. Minervini in an unrelated matter. *Id.*

On December 30, 1980, Assistant Public Defender Hanson filed a motion to withdraw from Petitioner's representation, certifying that because the interests of Petitioner and Minervini were "adverse and hostile," they could not both be represented by the Public Defender's Office without a conflict of interest. *Id.* at R. 117-18. With less than two weeks remaining before Petitioner's trial was scheduled to commence on January 12, 1981, the State agreed not to call Minervini as a witness in Petitioner's trial. Finding that the State's decision obviated the Public Defender's conflict, the trial court denied the motion to withdraw on January 5, 1981. *Id.* at R. 121. Later that day, the Public Defender filed an Amended Motion to Withdraw, advising the trial court that based upon confidential communications received from Petitioner and Minervini, a conflict of interest had arisen which prevented the Public Defender's Office from providing Petitioner effective assistance of counsel and requesting the appointment of a "special public defender." *Id.* at R. 119.

Parker was appointed as a "special public defender"[7] to represent Petitioner. *Id.* at R. 122. Given the impetus for the motions and the nature of the proceedings, Petitioner cannot credibly argue that his presence was required to ensure fundamental fairness or a "reasonably substantial . . . opportunity to defend against the charge." *See Snyder v. Massachusetts,* 291 U.S. 97, 115 (1934) (Cardozo, J.). The Court concludes that Petitioner could have contributed little had he been at the hearings and that he would have gained nothing by attending. The Public Defender was diligent in taking the appropriate measures to protect Petitioner's right to effective assistance of counsel. No deficiency in their representation has been shown and in any event, there is no showing of any prejudice whatsoever to Petitioner, in the context of an ineffective assistance of counsel claim.

Finally, the Court notes that Petitioner states parenthetically that "there were additional hearings and pretrial conferences that [he] was not permitted to attend." He does not identify the proceedings, however. *see* Dkt. 61 at 41. Moreover, as discussed, during the federal evidentiary hearing, Petitioner confirmed that he was limiting his complaint to two hearings, one on increased security and the other on a motion in limine directed to the admissibility of witness Gusrang's deposition.

In the event this Court has construed too narrowly the remand order, and hearings which took place during and after Petitioner's trial are within the scope of the remand, the result is the same. As for the hearing on Parker's motion in limine addressed to the admissibility of Gusrang's deposition, it is apparent that Parker attempted to prevent the

---

[7] *See* Fla. Stat. 27.53 (Supp. 1980) ("If at any time during the representation of two or more indigents the public defender shall determine that the interests of those accused are so adverse or hostile that they cannot all be counseled by the public defender or his staff without conflict of interest, or that none can be counseled by the public defender or his staff because of conflict of interest, it shall be his duty to certify such fact to the court, and the court shall appoint one or more members of The Florida Bar, who are in no way affiliated with the public defender, to represent those accused."). *See also Babb v. Edwards,* 412 So.2d 859 (Fla. 1982).

deposition from being read to the jury, contending that it was hearsay, *see* Dkt. 8, Ex. 001, Vol. II at R. 419-423. Petitioner has not shown that Parker prevented him from being present during this hearing. Moreover, Petitioner has not shown how he was prejudiced by not being present, assuming Parker was deficient in not having him present. Petitioner could not have contributed to the legal arguments relative to the admissibility of the deposition and no factual issues were resolved during the hearing. Petitioner's presence would not have changed the outcome of the hearing.

Having not persuaded the trial court to prohibit the State from reading Gusrang's deposition, Parker engaged in discussions with the State in a successful attempt to limit those portions of the deposition which would be read. The record does not reflect a hearing *per se* on the results of those discussions, merely an announced stipulation. Significantly, Parker testified that he would have discussed the admissibility of the Gusrang deposition with Petitioner. Being confronted with an order allowing the deposition to be read, Parker reasonably negotiated outside the presence of the court with the State as to what portions would not be read. These discussions did not constitute a hearing to which Petitioner was entitled to be present. Moreover, his presence may understandably have thwarted those discussions. Petitioner has not shown Parker's performance in this regard to have been deficient.

With respect to Petitioner's complaint that he was prevented from being present during an emergency hearing on increased security measures implemented by the trial judge, he has not shown that Attorney Parker had any control over his presence. According to Parker, the judge called counsel into chambers on the second day of trial and essentially announced that he was implementing additional security as a result of information

suggesting a planned escape involving Petitioner.[8] Reflecting back, Parker testified before this Court that he does not consider it to have been a hearing *per se*, more of an "announcement" by the judge. Moreover, even if Petitioner was entitled to be present, Petitioner has not shown how his presence or participation would have contributed to the fairness of that proceeding. The state court judge had the authority to impose such security measures as he deemed appropriate, so long as there was no impact on Petitioner's right of a fair trial. *See Deck v. Missouri*, 544 U.S. 622, 125 S.Ct. 2007, 2012 (2005); *Holbrook v. Flynn*, 475 U.S. 560, 568 (1986). In any event, Petitioner has not shown that he was prejudiced by any action or inaction of Attorney Parker in this regard.

If Petitioner had shown that his presence may have contributed to the fairness of any of these hearings, he arguably could assert a claim under *Stincer*. Although Petitioner

---

[8]After hearing opening statements on the second day of the trial, the trial court announced a recess at 10:25 a.m. *See* Dkt. 8, Ex. 001, Vol. II at 129. The record reflects that a conference was then held in chambers during which Attorney Parker was informed that information the trial court judge received during a conference with members of the State Attorney's staff and the Pasco County Sheriff's Department had caused concern for the security of court personnel and the jury. During a conference held after Petitioner was escorted to the courthouse that morning, Mr. Garmon, the State Attorney's investigator, and Detective Sergeant Greg Devlin informed the trial court judge that razor blades were found concealed on Petitioner's person on the first day of trial, and that very morning, deputies discovered that Petitioner had hacksaw blades concealed on him. The trial court was also informed that the Pasco County Sheriff's Department had received information from an inmate that Petitioner planned to have a .38 caliber handgun brought into the courtroom during the course of the trial for use in his escape. Attorney Parker was informed that additional security measures were being implemented, including having all witnesses and spectators entering the courtroom searched with a metal detector. The trial court also ordered that the first three rows of the courtroom be reserved for law enforcement officers and the State Attorney's staff (Dkt. 8, Ex. 001, Vol. II at R. 415-16). In the interim, sheriff's deputies searched the courtroom and the witnesses. *See* Dkt. 8, Ex. 001, Vol. I at R. 129. When the trial reconvened at 11:00 a.m., the trial court judge informed the witnesses, out of the presence of Petitioner and the jury, that a rule of procedure had been invoked which required them to remain outside the courtroom except when called to testify (Dkt. 8, Ex. 001, Vol. II at R. 418). The witnesses were directed to return to the hallway, and Petitioner was returned to the courtroom. The transcript reflects that during the conference, Parker agreed to the increased security measures. *Id.* at 415.

As discussed more fully below, six months before his murder trial began, a Pasco County jury found Petitioner guilty of attempted escape, battery on a law enforcement officer, and aggravated assault. When Petitioner went to trial he had already been committed to the custody of the Florida Department of Corrections to begin serving his sentence on the escape conviction. Moreover, Petitioner knew that he was facing the possibility of a death sentence if found guilty of murder. The trial court had sufficient cause for this level of security given Petitioner's criminal history and the State's need to maintain custody over a convicted felon serving a long prison sentence.

was represented by counsel at every hearing he has identified, his exclusion from those hearings may have violated *Stincer* if his presence would have contributed to the fairness of the hearing. However, Petitioner must prove more to establish that he is entitled to habeas relief on his ineffective assistance of counsel claim under *Strickland*. *See Diaz v. Crosby*, 402 F.3d 1136, 1142-43 (11th Cir. 2005). To obtain habeas relief, Petitioner must demonstrate that the performance of his attorneys was deficient <u>and</u> that he suffered prejudice as a result of that deficient performance, not merely that he was absent from those hearings. Petitioner has failed to demonstrate how he was prejudiced by his absence from the pretrial, trial, or post trial hearings, even assuming some deficiency in his attorneys' performance. Having failed to meet the prejudice prong of the *Strickland* test, Petitioner has not established that he is entitled to relief on this claim. *See Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

Finally, Petitioner has failed to establish that the trial court's finding that he failed to meet *Strickland*'s two-prong test is contrary to or an unreasonable application of clearly established Federal law or resulted in a decision that is based on an unreasonable determination of the facts in light of the evidence presented. Having failed to make the necessary showing, Petitioner is not entitled to § 2254 relief on this claim of ineffective assistance of counsel.

**Ground Six**

The claims raised in Ground Six relate to Petitioner's right to testify in his own defense. The crux of Petitioner's claim is that he did not exercise his right to testify because he did not want to give the State an opportunity to use his prior felony conviction(s) for impeachment. Petitioner asserts that Attorney Parker was ineffective for failing to file a motion to suppress evidence of his attempted escape conviction, failing to research the law

governing the use of prior convictions for impeachment purposes while the conviction was pending on direct appeal and refusing to allow Petitioner to testify on his own behalf. Dkt. 1 at 18A-19A.[9]

Petitioner contends that Parker should have moved to suppress evidence of his escape conviction because the State intentionally prosecuted the escape charge before his trial on the murder charge so that his conviction could be used as a tool to prevent him from testifying during the murder trial. *See* Dkt. 1 at 18A. Respondent argues that the decision to proceed on the escape charge was a tactical decision by the State which cannot provide a basis for relief under § 2254. *See Bordenkircher v.* Hayes, 434 U.S. 357, 368 (1978) ("In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion"); *see also United States v. Crespedes*, 151 F.3d 1329, 1332 (11th Cir. 1998), *cert. denied*, 525 U.S. 1086 (1999). As Respondent correctly asserts, prosecuting Petitioner on the escape charge was within the prosecutorial discretion of the State, a matter over which defense counsel had no control. Petitioner has not shown that Parker's failure to challenge the discretion of the State Attorney to prosecute Petitioner for the attempted escape charge before his murder trial was deficient performance.

---

[9]Following his arrest for the murder on May 31, 1980, Petitioner was confined in the Pasco County jail. He attempted to escape from the jail on June 8, 1980. Petitioner was charged with attempted escape, battery on a law enforcement officer, and aggravated assault. After a jury trial, he was convicted as charged and sentenced to 15 years on the attempted escape charge and 5 years on each of the two remaining charges. Accordingly, when Petitioner's murder trial began, he was a convicted felon and if he testified during his murder trial, he would have been subject to impeachment and necessarily would have had to admit to the jury that he had a prior felony conviction. Moreover, if convicted of the murder, the prior conviction could be used as an aggravating factor in the penalty phase of the murder trial.

Petitioner does not assert that the decision to prosecute him on the escape charge was based on a constitutionally impermissible motive. *See United States v. Smith*, 231 F.3d 800, 807-08 (11th Cir. 2000). Rather, he contends that the State's decision to proceed with the escape charge before the murder trial was motivated by a desire to use the escape conviction for impeachment purposes if he testified during the murder trial. Absent evidence that the State's motivation to prosecute was constitutionally impermissible, there was no reason for Parker to have moved to suppress evidence of the escape conviction on the basis that the State engaged in selective prosecution

According to Petitioner, had Parker researched the rules governing the use of prior convictions for impeachment purposes, he "would have learned that the State would have been prohibited from using the escape conviction against Petitioner, [sic] because that conviction was pending on appeal at the time of Petitioner's murder trial" (Dkt. 1 at 18A). Petitioner is misinformed.  Under Florida law, evidence of a defendant's prior conviction for a crime punishable by a sentence of more than one year is admissible even though the matter is pending on appeal. *See* Fla. Stat. § 90.610(1)-(2) (1979). The Court finds that Petitioner fails to demonstrate that any valid basis existed for Parker to have moved to suppress evidence of his escape conviction. Parker was not ineffective in failing to file a meritless motion.

In his petition, Petitioner argues that Attorney Parker prevented him from testifying in his own behalf.  According to Petitioner, Parker refused to call him to testify "under any circumstances," because "he [Parker] already had his trial strategy laid out, and if he was go[ing] to win the case that it would be on opening and closing arguments, and that he would not be able to call any witnesses for the defense. . . . Petitioner still argued with Mr.

-14-

Parker that he must take the witness stand in his own defense, but Mr. Parker refused to discuss the issue any further" (Dkt. 61 at 5).

This Court conducted an evidentiary hearing on March 2, 2006, during which Petitioner and Attorney Parker testified.  Essentially, Petitioner testified that he wanted to testify on his own behalf but that Parker "wouldn't allow it" because he had not had enough time to prepare Petitioner.  Although Petitioner acknowledges that he discussed whether or not to testify with Parker, he maintains that Parker would not allow him to testify and he thought it was the attorney's decision.  Petitioner acknowledges, however, that at the time of his trial, he was aware that he had the right to testify and knew that if he wanted to testify, he could. Just before his murder trial, he had gone to trial on the attempted escape charge and in fact had testified on his own behalf in that trial.

Attorney Parker is an experienced criminal defense attorney and was so when he was appointed to represent Petitioner. When Judge Keogh appointed Parker to represent Petitioner, Parker had previously handled three murder cases and had tried numerous criminal cases. Parker has been licensed to practice law since January 1969.  He has practiced primarily in the field of criminal defense.  After two years in the military service during which he taught military justice, he served a brief stint as a county court prosecutor. He then spent two years as a public defender in Pinellas County before transferring to Pasco County, where he served two and a half years as the only assistant public defender there.

Parker was appointed four months before trial.  The first thing Parker did after being appointed was to review the Public Defenders' file and the State's discovery. He discussed the case with two of the three attorneys who had represented Petitioner. Parker spent a considerable amount of time meeting with Petitioner in person at the local jail facility.  He

estimates that it could have been as much as three days worth of consultation, based on eight hour days.  Parker spent most of his time discussing trial strategy with Petitioner rather  than whether or not Petitioner would testify. His recollection is that as a matter of strategy, Petitioner's prior attorneys did not think that Petitioner should testify.[10]  He did recall specifically discussing with Petitioner whether or not Petitioner would testify in his own defense, however, and recalled recommending against it, although Petitioner wanted to testify.

Parker's standard practice in representing criminal clients was to explain to them their right to testify, discuss the benefits and risks of exercising that right, and reach an agreement, although the client would make the ultimate decision as to whether to testify. In discussing with Petitioner whether or not he would testify, Parker told him that he had the absolute right to testify and face the jury "eyeball to eyeball."  He advised against testifying, however, explaining to Petitioner that he had tried cases against the experienced prosecutor assigned to the case and that Petitioner would not be able to "win the war" on cross-examination with that prosecutor.  In the end, Parker recalls that although Petitioner had expressed a desire to testify, he agreed that he would not.

In short, Parker's testimony and recollection of his conversations with Petitioner and Petitioner's decision not to testify are credible.  Parker was an experienced criminal defense lawyer who recognized that his client had the absolute right to testify and that ultimately it was the client's decision, rather than the attorney's.  Notwithstanding being appointed to represent Petitioner in a death penalty case just four months prior to trial, Parker spent a considerable amount of time reviewing evidence with Petitioner and

---

[10] Petitioner maintains that his three prior attorneys had advised him that he would have to testify and had even put him through mock trial examination sessions.  Attorney Parker recalled that virtually no one utilized mock trials in 1981.  This conflict in the testimony is not material to the issue.

discussing and agreeing on a trial strategy with Petitioner.  He thought the case was "defensible". His theory of defense, which he discussed with Petitioner, was the existence of reasonable doubt.  Parker did not think that the State could establish that Petitioner was the perpetrator of the murder and that it had no evidence placing the murder weapons in Petitioner's possession.

Parker explained that at the murder scene there was a substantial quantity of blood on the walls, ceiling and furniture and that the perpetrator would necessarily have been "covered with blood."  The State's evidence included three of Petitioner's shirts and one pair of pants.  The Florida Department of Law Enforcement ("FDLE") laboratory reported three small spots on one of the shirts which appeared to be blood. It could not, however, type the blood as human or animal. Parker recalled that although the State's evidence clearly placed Petitioner inside the victim's home on the night of the murder, as he was seen leaving the victim's home carrying property he had stolen, the lack of blood on Petitioner's clothing supported his defense that Petitioner had stolen from the victim but had not committed the murder.[11]

In sum, contrary to Petitioner's testimony, Parker thoroughly discussed the State's case against Petitioner with him, discussed and agreed on a theory of defense which was supported by a lack of evidence, and communicated with Petitioner throughout the trial while in court, during breaks and after court. Ultimately, although Petitioner was convicted, through Parker's efforts he was spared the death penalty.

The right to testify on one's own behalf at a criminal trial is one of the rights that "are essential to due process of law in a fair adversary process." *Faretta v. California,* 422 U.S.

_____

[11] Petitioner acknowledges that the State's evidence included his footprints in the victim's blood inside the house, that a cab driver had picked him up outside the victim's house and that a bartender had seen him leave a bar with the victim.

806, 819 n.15 (1975). In *United States v. Teague*,[12] the Eleventh Circuit determined that "the appropriate vehicle for claims that the defendant's right to testify was violated by defense counsel is a claim of ineffective assistance of counsel under *Strickland*." 953 F.2d 1525, 1534 (1992).

To prevail on this claim, Petitioner must meet both prongs of the *Strickland* test for ineffective assistance of counsel. *i.e.*, Petitioner must establish that trial counsel's performance was deficient and that there is a reasonable probability that, but for trial counsel's unprofessional conduct, the outcome in his case would have been different. *See Strickland v. Washington*, 466 U.S. at 694; *see also Nichols v. Butler*, 953 F.2d 1550, 1552-53 (11th Cir. 1992) (en banc).

There is no reason to discredit Attorney Parker's testimony that he explained Petitioner's right to testify to him, that he advised Petitioner against testifying for good reason, and that Petitioner heeded that advice in deciding not to testify. Petitioner's claim that Parker "prohibited" him from testifying is simply not credible. Where, as here, an attorney believes that it would be unwise for a defendant to testify, the attorney should "advise the client in the strongest possible terms not to testify". *Teague*, 953 F.2d at 1535. Having done so, Attorney Parker fulfilled his Sixth Amendment responsibility to his client and was not ineffective in relying on his client's assent to that advice. *See id.*

Based on the testimony presented, this Court finds and concludes that Attorney Parker did not prohibit or prevent Petitioner from testifying at trial in his own defense. Rather, this Court finds that Attorney Parker thoroughly explained Petitioner's right to testify

---

[12] In this circuit, *Teague* governs the determination of whether Petitioner's right to testify was violated at his trial even though the trial predated the decision. *See Nichols v. Butler*, 953 F.2d 1550, 1552-53 (11th Cir. 1992) (en banc) (applying *Teague* to grant habeas relief for a violation of the right to testify at a trial that predated *Teague*).

and gave his best advice in recommending against Petitioner testifying and that Petitioner followed that advice, although reluctantly.  Parker deferred to the wishes of his client and there is no reasonable support for Petitioner's allegation that Parker prohibited him from exercising his right to testify. Attorney Parker's performance in this regard was not deficient. *See Strickland*, 466 U.S. at 687; *Teague*, 953 F.2d at 1533.

Petitioner has failed to establish that the trial court's rejection of this claim is contrary to or an unreasonable application of clearly established Federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. Having failed to make the necessary showing, Petitioner has not demonstrated that he is entitled to federal habeas relief on this claim.

**Ground Seven**

Petitioner contends that Attorney Parker was ineffective for failing to move to suppress statements he made to the investigating officers post-*Miranda*. *See* Dkt. 1 at 16A. Petitioner complains that Attorney Parker "did not fully argue the issue about the *Miranda* warnings allegedly given to Petitioner prior to being detained at the NPRPD," "never questioned Sargent David Brown or Detective Charlie Farrell about the alleged *Miranda* warnings," "did not obtain a copy of Petitioner's waiver of said rights," "did not obtain a copy of the waiver allegedly given NPRPD officers for possession of his shoes, wallet, photograph and fingerprints prior to his arrest," and that counsel "failed to secure the original notes and tape recordings of Petitioner on the night in question."

In his testimony before this Court, Petitioner admitted that when he was initially confronted by the police, he was read his *Miranda* rights. He does not contend that he was threatened or coerced into speaking with the officers. According to Petitioner, he agreed

to accompany the officers to the police station and "talk to them" about their investigation, but after witness Gusrang pointed to him in the parking lot and said "that's the son of a bitch who killed Wally," Petitioner stated, "I think I need an attorney now." He was then transported to the New Port Richey Police Department ("NPRPD").

Petitioner testified that after they arrived at the police station, he was interviewed in the detective division's office. The officers questioned him regarding his activities on the evening of the murder. According to Petitioner, he answered "some" of those questions, but not others. In response to the Court's query, Petitioner testified that the questions he answered involved identifying himself and confirming that he knew the victim, where he resided, and where he had been on the day of the victim's death. Petitioner testified that during the course of further questioning, Officer Farrell accused him of lying, at which time he stated: "I want to call an attorney right now". All questioning then ceased. He admits that he was again read his *Miranda* rights at 6:00 A.M. the next morning.

In support of his assertion that Attorney Parker was ineffective for failing to move to suppress the statements he made during the interview, Petitioner states that while he did not confess to the murder, the State used "some" of his answers to "some" of the questions as "admissions" during his trial. Petitioner contends that the police officers testified that he used his brother's identification card, that he gave up his shoes and wallet, and that he volunteered to be photographed.[13]

---

[13] A review of the officers' trial testimony reveals that Sergeant Brown and Deputy Ellis were the only law enforcement officers who related statements Petitioner made during the May 30-31, 1980 interview to the jury. When called to testify, Brown stated that when he first made contact with Petitioner, Petitioner identified himself as Charles Engle (Dkt. 8, Ex. 001, Vol. IV at R. 694-95). According to Brown, Petitioner produced identification papers which supported that statement. *Id.* at R. 695.

Petitioner was charged as Donald Halpin, a/k/a Charles W. Engle. When examined under the harmless error standard set forth in *Brecht v. Abrahamson*, Brown's testimony cannot be considered to have
(continued...)

Attorney Parker was aware that Petitioner made statements during the interview, that those statements had been made after Petitioner was read his *Miranda* warnings, and that the State intended to introduce Petitioner's statements during the trial. While the record confirms that he did not file a pretrial motion to suppress, he made an oral motion in limine in chambers on May 6, 1981 challenging the admissibility of Ellis's testimony regarding Petitioner's statements. Attorney Parker acknowledged that the statements were made after Petitioner had been apprised of his *Miranda* rights but argued that they were "at best, inconsistent statements" which the State should not be allowed to try to "couch it in such a way that it looks like an admission or a confession" (Dkt. 8, Ex. 001, Vol. IV at R. 865).  In response, the State argued that "the fact that [Petitioner's] statement is not only illogical and inconsistent within itself, but also inconsistent with other known facts, certainly makes it relevant and admiccable [sic] and inculpatory." *Id.* at R. 867.  Attorney Parker's motion was denied.  *Id.* at R. 869.

The trial transcript reflects that when Ellis was called to testify, the prosecutor asked him what questions he posed to Petitioner during his initial interview and what responses Petitioner made to his questions.  Attorney Parker objected to the question, renewing the arguments he presented during the hearing on his motion to limine.  The objection was overruled.  *Id.* at R. 907. According to Ellis' trial testimony, he read Petitioner his *Miranda* rights several times from a card, and Petitioner indicated that he understood those rights. *Id.* at 905-06. Ellis testified that when he asked Petitioner whether, "[h]aving those rights

[13](...continued)
had a "substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. 619, 623 (1993).

-21-

in mind . . . he would be willing to answer [Ellis's] questions," Petitioner responded "[y]es, sir." *Id* at 906.

Ellis testified regarding several inconsistent statements Petitioner made about his activities before and after the murder occurred.[14]   When arguing in support of the motion in limine, Parker accurately characterized Petitioner's statements as, at most, inconsistent statements rather than admissions *per se*. Viewed contextually, they are best characterized as self-serving exculpatory statements.[15]

---

[14] On cross-examination, Ellis testified that the interview with Petitioner was conducted between 11:00 p.m. and 3:00 a.m. *Id.* at R. 922.  According to Ellis, there was no audio, video, or stenographic recording made of the interview.  *Id.* at R. 914-15.  Ellis acknowledged that he did not know whether other officers engaged in discussions concerning the case which Petitioner may have overheard before entering the interview room.  *Id.* at R. 917-19.  Having admitted that due to the passage of time, his memory was "somewhat foggy on all the exact details" of the interview, Ellis further acknowledged that he was testifying from his recall, refreshed by notes he took during the interview. *Id.*  Ellis stated that he attempted to write down Petitioner's statements as he spoke, but conceded that he could not quote Petitioner's statements verbatim. *Id.* at R. 919.

[15] Ellis testified that when he asked Petitioner what he was wearing on the evening the murder occurred, Petitioner stated that he was wearing a "lemon yellow colored shirt and corduroy trousers." *Id.* at 907. When Ellis told Petitioner that a cab driver saw the suspect leaving the victim's residence wearing similar clothing, Petitioner stated that he was actually wearing a blue shirt and blue jeans. *Id.*

Ellis further testified that when asked whether he was aware that the victim had been murdered, Petitioner responded that he first learned of the murder when the police told him that they were investigating a homicide and the theft of a stereo. *Id.* at R. 908. Petitioner then stated, "Bob, I want you to know that I would never hurt anybody.  I certainly wouldn't stab or beat anyone over a stereo." According to Ellis, he stopped the interview at that point to confer with other officers involved in the investigation who had had contact with Petitioner before the interview to find out if anyone recalled having told Petitioner that the victim was stabbed and beaten.  *Id.* at R. 908-09.  When Sergeant Brown and Officer Marinec stated that they had not discussed the details of the killing with Petitioner, Ellis returned to the interview room and asked Petitioner how he knew the victim was beaten and stabbed.  According to Ellis, Petitioner responded "[w]ait a minute, I didn't say that he was beaten and stabbed, I just said that I wouldn't beat anybody and I wouldn't stab anybody over a stereo." *Id.* at R. 909.

Petitioner told Ellis that he was at the Wag-On-Inn and Sandy's Place during the evening of May 29, 1981.  *Id.*  Petitioner further stated that he left the bars prior to closing time.  *Id.* at R. 910. Accompanied by his mother, Ruth Engle, and one of his brothers, Petitioner then "went up to Port Richey to an all-night convenience store to buy a six-pack of beer." They arrived at Mrs. Engle's house on Washington Street at approximately 1:00 a.m., and after sitting and talking for a while, Petitioner went to bed at approximately 2:00 a.m. *Id.*

Petitioner stated that he got out of bed the following morning at approximately 8:00 or 9:00 a.m. and left the house in a pickup truck with Mrs. Engle, brother Charles Engle, and Jerry Brown, a girl that resided with the family.  *Id.* at R. 911. Petitioner recalled that they "traveled to Green Key Road, and then to Indian
(continued...)

In *Miranda*, the Supreme Court held that a suspect subject to custodial interrogation has the right to consult with an attorney and to have counsel present during questioning, and that the police must explain this right to him before questioning begins. *Miranda*, 384 U.S. at 469-473.   If the suspect invokes that right at any time, the police must immediately cease questioning him until an attorney is present. *Edwards v. Arizona,* 451 U.S. 477, 484-85 (1981). A defendant must articulate his desire to have counsel present with sufficient clarity so that a reasonable police officer under the circumstances would understand the statement to be a request for an attorney. *Davis v. United States*, 512 U.S. 452, 459 (1994).  *See also Coleman v. Singletary*, 30 F.3d 1420, 1425 (1994).

Having reviewed the record and considered the parties' testimony, this Court concludes that there was no reasonable basis for Attorney Parker to have moved to suppress Petitioner's statements under *Miranda*. Petitioner admits that he received *Miranda* warnings before being questioned by the officers and he does not contend that his waiver of his rights under *Miranda* was not knowing and voluntary.  After overhearing a comment made by witness Gusrang In the parking lot of the Wag-On-Inn while waiting for the officers to drive him to the NPRP station, Petitioner made the equivocal statement: "I *think* I need an attorney now."[16]  Despite having been warned that he had the right to

---

[15](...continued)
Rocks Beach, Clearwater, Largo area to go drinking at the local bars." *Id*. When Petitioner learned that Ellis had the Washington Street house under surveillance and had spoken with Ms. Brown at the house during the time Petitioner stated that she was out of town with him, Petitioner stated that Ms. Brown was not with him at that time because they had argued and she went back to Green Key Road. *Id*.

[16] Under these circumstances, a reasonable officer could have objectively concluded that Petitioner's statement "I *think* I need an attorney now" was not a sufficiently clear request for counsel to require them to discontinue questioning Petitioner until counsel was present, particularly so when considered in light of his apparent willingness to continue to talk with them about the investigation. *See United States v. Davis*, 512 U.S. 452, 462 (1994); *United States v. Mikell*, 102 F.3d 470, 476 (1996).

have counsel present during questioning and to remain silent, Petitioner continued to speak with the officers, answering some of their questions and refusing to answer others. It is apparent from Petitioner's testimony that the statements attributed to him were made in response to questions from the officers before Petitioner expressly and unequivocally invoked his right to have counsel present during questioning.[17] At that time, consistent with the holding in *Edwards*, questioning ceased.[18]

When arguing in support of the motion in limine, Attorney Parker informed the trial court that he did not consider the statements to be admissions and acknowledged that they were made post-*Miranda*. He was aware of the statements attributed to Petitioner, that Petitioner had been read his *Miranda* warnings before making any statements, that Petitioner had answered questions freely and voluntarily after having been warned and acknowledged, by virtue of his argument on the motion on limine, that there was no reasonable basis to challenge the admissibility of the statements under *Miranda*.

While he did not file a motion challenging the admissibility of the statements under *Miranda*, which he correctly surmised would be unsuccessful, Parker did challenge the admissibility of the statements in his motion in limine, attempting to prevent Ellis from testifying regarding Petitioner's post-*Miranda* statements. When Ellis was questioned during trial about Petitioner's statements, Parker again objected, albeit unsuccessfully. His actions were reasonable and have not been shown to have been deficient. An attorney is

---

[17] According to Petitioner, he expressly invoked his right to counsel after his repeated responses of "I don't know what you're talking about" prompted Officer Farrell to accuse him of being "a goddamn liar." Petitioner testified that he responded: "I want to call an attorney right now."

[18] Petitioner's invocation of his Fifth and Sixth Amendment rights was not relayed to the jury. *See Wainwright v. Greenfield*, 474 U.S. 284, 641(1986) (citing *Doyle v. Ohio, 426 U.S. 610, 618 (1976)*).

not ineffective for decisions that are a part of a trial strategy that, in hindsight, did not work to the defendant's advantage. *Strickland,* 466 U.S. at 689.

In short, there was no *Miranda* violation about which to complain. The failure to file a motion to suppress was not deficient performance and Petitioner was not prejudiced. The statements were admissible. Trial counsel is not ineffective for failing to present a meritless issue. Having failed to establish that Parker's performance was deficient or that he suffered prejudice, Petitioner has not satisfied *Strickland*'s two-prong test.

The state court's finding that Petitioner failed to satisfy the *Strickland* test is supported by the record (Dkt. 8,  Ex. 018, Order on Motion for Rehearing at R. 1247).  Its disposition of Petitioner's claims was neither contrary to nor an unreasonable application of clearly established federal law. Nor was its decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d). Petitioner is not, therefore, entitled to relief  on this claim.

### Conclusion

For the foregoing reasons, Petitioner is not entitled to relief under 28 U.S.C. § 2254. Upon consideration, it is **ORDERED AND ADJUDGED**:

1.  The Petition for Writ of Habeas Corpus is **DENIED** (Dkt. 1).

2.  The Clerk shall enter judgment against Petitioner, terminate all pending motions, and close this case.

Done and Ordered this 20th day of March, 2006.

JAMES D. WHITTEMORE
United States District Judge

Copy to: Petitioner and Counsel of Record